# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Robert White,

        Plaintiff,

v.

Evanston Insurance Company,

        Defendant.

No. CV-15-00980-PHX-DJH

**ORDER**

Both parties have filed motions for summary judgment on the issue of whether Defendant Evanston Insurance Company had a duty to defend Plaintiff Robert White in a lawsuit filed against him by a third party.

Robert Phillips filed the underlying lawsuit (the "Phillips Lawsuit") in Riverside County Superior Court (California state court). Phillips claimed he was injured when he collided with a golf cart being driven by Plaintiff at the Lake Elsinore race track during the 2013 Red Bull Lake Elsinore National (the "Event"), a professional motocross event. Phillips named a number of individuals and entities involved in the Event as defendants in the Phillips Lawsuit, including Plaintiff.

Plaintiff worked[1] at the event on the day of the accident. He had been invited[2] to work at the event by Marc Peters, the owner of Petersbuilttrack, LLC ("Petersbuilt").

---

[1] The word "worked" is to be given no legal significance here. By "worked" the Court simply means that Plaintiff performed tasks and received compensation in return.

[2] The word "invited" also has no legal significance.

Defendant had issued an insurance policy to Racer Productions, Inc. (the "Policy"). There were a number of additional insureds on the policy, including certain entities involved in the 2013 Red Bull Lake Elsinore National. Petersbuilt was not listed as an additional insured on the policy, and Petersbuilt did not have its own insurance.

Plaintiff tendered his defense in the Phillips Lawsuit to Defendant, Defendant denied coverage, and this action followed. Plaintiff alleged three causes of action based on Defendant's refusal to defend Plaintiff in the Phillips Lawsuit. To succeed on any of his causes of action, Plaintiff must demonstrate that Defendant had a duty to defend him in the Phillips Lawsuit. After the close of discovery on the issue of duty to defend, both parties filed motions for summary judgment on that issue.

Plaintiff White's Motion for Summary Judgement re: Duty to Defend (Doc. 45) is supported by his Separate Statement of Facts (Doc. 46). Defendant filed a Response (Doc. 51) supported by a Controverting Statement of Facts (Doc. 53), to which Plaintiff filed a Reply (Doc. 56).

Defendant's Motion for Summary Judgment (Doc. 47) is supported by its Amended Statement of Facts (Doc. 49). Plaintiff filed a Response (Doc. 52), along with a supplemental statement of facts (Doc. 54), to which Defendant filed a Reply (Doc. 57).

## I. Factual Background

The facts in this case can be divided into: (A) the Event and entities and individuals involved in its production; (B) the terms of the Policy; and (C) the accident giving rise to the Phillips Lawsuit. The following facts are undisputed unless otherwise indicated.

### A. The Event and Relevant Entities

The Event took place in California. MX Sports, Inc. was the event organizer. (Doc. 46 at ¶2; Doc. 53 at ¶2). The parties contest whether Plaintiff was an agent of MX Sports—or any other Insured—at the time of the accident. (*Id.*) MX Sports contracted with a variety of entities in organizing the event, many of which are listed as additional insureds on the Policy. (*Id.* at ¶¶5-11; Doc. 46-14 at 4-5).

MX Sports entered into a contract with Petersbuilttrack, LLC ("Petersbuilt"), but

- 2 -

Petersbuilt is not listed as an additional insured on the insurance policy. (*Id.*) Petersbuilt was tasked with developing a motocross racetrack at the event site and helping to maintain it during race day. (Doc. 46 at ¶8; Doc. 53 at ¶8). MX Sports and Petersbuilt had worked together in the past, which gave MX Sports some idea what Petersbuilt would charge, so the entities did not enter into a written agreement or negotiate a fixed price for the development and maintenance of the motocross track. (*Id.* at ¶¶9, 19).

Marc Peters, the owner and operator of Petersbuilt, called Plaintiff to ask him to assist in track preparation and maintenance at the event. (Doc. 46 at ¶ 12; Doc. 53 at ¶12). Plaintiff is an Arizona resident. (Doc. 1-1 at 5). Plaintiff's responsibilities at the Event included bulldozing the track on Monday and watering the track thereafter, which involved operating heavy machinery including a water truck. (Doc. 46 at ¶¶12, 23; Doc. 53 at ¶¶12, 23). Plaintiff was paid an hourly rate for his work. (*Id.* at ¶19). MX Sports paid Petersbuilt for Plaintiff's work, and Petersbuilt then paid Plaintiff his hourly rate. (*Id.*) In his deposition, Peters stated that he did not intend to pay Plaintiff until MX Sports paid Petersbuilt. (Doc. 46-6 at 61:12-16).[3]

During the event and the event preparation, Plaintiff took direction from John Ayers.[4] (Doc. 46 at ¶13; Doc. 58 at ¶58). Plaintiff claims that Ayers directed him to perform tasks that were beyond the scope of what Petersbuilt had agreed to perform, such as burying cables. (Doc. 46 at ¶13). Defendant acknowledges that "certain track team workers may have assisted the television personnel to bury cables under the track surface." (Doc. 53 at ¶13). Plaintiff further avers that at the event, Ayers was considered the track supervisor and various individuals told Peters that Ayers was his "boss." (Doc.

---

[3] The parties dispute Plaintiff's precise job title, especially whether he was part of a "crew." (*See, e.g.,* Doc. 49 at ¶71 and Doc. 46 at ¶¶11, 14). Whether Plaintiff was part of a crew is relevant to the question of whether Plaintiff was an additional insured. (Doc. 47 at 13). Because the Court ultimately concludes that Defendant had a duty to defend Plaintiff because the potential exists that he was an Employee of an Insured under the Policy, the Court need not decide whether Plaintiff was an additional insured. This renders the dispute about whether Plaintiff was part of a "crew" irrelevant to this motion.

[4] John Ayers was an employee of Gear Services, Inc., an entity with whom MX Sports contracted. (Doc. 46 at ¶11; Doc. 53 at ¶11). Gear Services, Inc. is an additional insured on the insurance policy. (Doc. 46-14 at 2-3).

46 at ¶18).  Defendant contests this assertion, stating, "The cited record only establishes that on race day, Peters was told that John Ayers, and employee of Gear Services, Inc., would be the 'track boss.'"  (Doc. 53 at ¶18).  The Court notes that Defendant's assertion inaccurately reflects the cited testimony, as Peters actually testified during his deposition, "Mr. Ayers would tell me he's the boss.  Mr. Ayers would come up to me and tell me what I needed to do.  I was instructed by Carrie, Davey, Tim Cotter, '*You work for Ayers*; he is our track boss.'"  (Doc. 46-6 at 9 (emphasis added)).[5]

Plaintiff claims he also took direction from Racer Management, LLC[6] employee Tim Cotter.  (Doc. 46 at ¶6).  Cotter was the event director.  (Doc. 46 at ¶6; Doc. 53 at ¶6).  MX Sports contracted with Racer Management, LLC in connection with the event.  (*Id.*)  Defendant identifies Cotter as the event operations director, but does not specify what entity employed him.  (Doc. 49 at ¶2).

Neither party clearly articulated what it is that Racer Management, LLC does or the precise nature of the contract between MX Sports and Racer Management, LLC.  Plaintiff simply asserts, "MX Sports uses Racer Management, LLC, employees for its work."  (*Id.* at ¶6)  And Defendant neither admits nor denies this statement, but simply says, "Admit that cited record establishes that Racer Management, LLC is a payroll provider that furnishes staff to various event operation companies such as MX Sports."  (Doc. 53 at ¶6).  The Court notes that Carrie Russel testified that she is the owner and manager of both MX Sports, Inc. and Racer Management, LLC (in addition to several other family businesses).  (Doc. 46-2 at 6).  Both Racer Management, LLC and MX Sports, Inc. are listed as additional insureds in the insurance policy.  (Doc. 46-14 at 2-3).

Cotter provided the track team, including Plaintiff, with t-shirts to be worn at the event.  (Doc. 46 at ¶14; Doc. 53 at ¶14).  Cotter explained in his deposition that there were a number of reasons for requiring the track team to wear the t-shirts.  (Doc. 49-1 at 149).  For example, he stated, "[T]hat shirt also gave – gives *our employees* access to the

---

[5] All page number citations are to CM/ECF page numbers.

[6] Racer Management, LLC is an additional insured on the insurance policy.  (Doc. 46-14).

- 4 -

racetrack." (Doc. 49-1 at 150 (emphasis added)). When asked about that statement, Tim Cotter stated, "Well, I probably misspoke. It was the different teams. The different teams got access to the racetrack." (*Id.* at 150-151).

Plaintiff avers, "MX Sports, through Tim Cotter, controlled the track crew schedule." (Doc. 46 at ¶15). Defendant emphasizes Cotter's interactions with Peters individually rather than Cotter's interactions with Plaintiff. (Doc. 49 at ¶¶18-24). Defendant also states that Cotter agreed to pay for the workers' lodging, for some additional equipment, and also provided Peters with "a couple of vehicles for his workers." (Doc. 49 at ¶¶22-24). The parties agree that MX Sports paid for Plaintiff's hotel room and some meals he ate at the track. (Doc. 46 at ¶16; Doc. 53 at ¶16).

Plaintiff asserts that MX Sports had the authority to "remove anybody on the track," including individuals brought in by Petersbuilt, and that MX Sports "actually told Peters at a later race that they did not want a particular track crew employee to return because that person would not take direction from MX Sports." (Doc. 46 at ¶17). Defendant challenges this assertion, and states, "As to the statement of what MX Sports told Petersbuilttrack about removing workers at a later event, this statement is irrelevant." (Doc. 53 at ¶17).

In the Phillips Lawsuit, there is a dispute surrounding Plaintiff's employment status. In the motions currently before the Court, Defendant has made some concessions on that point. In its motion, Defendant does not deny that Plaintiff was under the direction and control of MX Sports during the event. (Doc. 47 at 4:12-14 ("Thus, for purposes of this motion for summary judgment only, Evanston will not dispute any factual assertion regarding MX Sports['] alleged control of [Plaintiff]'s services at Lake Elsinore.")). And in its Response, Defendant does not firmly reject the idea that Plaintiff was an agent of MX Sports or under MX Sports' control, but rather asserts that it does not matter. (Doc. 51 at 6:1-4 ("No matter how one characterizes White, be it as an employee of Petersbuilttrack, or under the direction and control of MX Sports…")).

Plaintiff worked both Saturday (the day of the professional race) and Sunday (the day of the amateur race). (Doc. 46 at ¶20; Doc. 53 at ¶20). Neither John Ayers nor Marc

Peters were at the event on Sunday. (*Id.* at ¶21).

**B. The Insurance Contract**

This section only lists relevant portions of the Policy and does not list the parties arguments related to the Policy. Defendant issued the Policy to Racer Productions, Inc. (Doc. 46-14 at 12). Plaintiff claims that under this policy, Defendant has a duty to defend him in the Phillips Lawsuit. The Policy states that Defendant will "have the right and duty to defend any ***Insured*** against a ***Suit*** for ***Injury or Damage*** covered by this policy," and will "have such a right and duty even if all of the allegations of the ***Suit*** are groundless, false, or fraudulent." (Doc. 46-14 at 44 (emphasis in original)[7]). The Policy defines "Insured" as "any person or organization that qualifies as an ***Insured*** under the **Who Is Protected Under This Policy Section**."[8] (Doc. 46-14 at 41).

The relevant section of the Policy states, "Your ***Employees*** are ***Insureds*** only for: work done within the scope of their employment by you; or their performance of duties related to the conduct of your business." (Doc. 46-14 at 46).

The Policy further states, "***Employee*** includes a ***Leased Worker***, other than a leased temporary worker." (Doc. 46-14 at 47). The term "Leased Worker" is defined as "any person who: is hired from an ***Employee Leasing Firm*** under a contract or agreement between the hirer and that firm; and is performing duties related to the conduct of the hirer's business." (*Id.*) "***Employee Leasing Firm*** means any person or organization that hires out workers to others. It includes any: employment agency, contractor, or service; labor leasing firm; or temporary help service." (*Id.*) The term "Leased Temporary Worker" is defined as "a **Leased Worker** who is hired to: temporarily take the place of a permanent ***Employee*** on leave; or meet seasonal or short-term workload conditions." (*Id.*)

---

[7] All emphases placed on particular words or phrases in the contract were in the original Policy unless otherwise indicated.

[8] The Policy does not contain a "Who Is Protected Under This Policy Section," but it does contain a section titled, "Who Is An Insured Under This Policy." (Doc. 46-14 at 46). Presumably the reference to the "Who Is Protected Under This Policy Section" actually refers to the "Who Is An Insured Under This Policy" section.

### C. The Phillips Lawsuit

The accident that forms the basis of the Phillips Lawsuit occurred after the races on Saturday. (Doc. 46 at ¶¶27-32; Doc. 53 at ¶¶27-32). Phillips was leaving the Event when he came into contact with a utility golf cart driven by Plaintiff. After the accident, a security guard asked Plaintiff who he worked for, and he responded that he worked for MX Sports and his "direct contact" was Tim Cotter. (*Id.* at ¶33)[9] The First Amended Complaint ("FAC") in the Phillips Lawsuit alleges, "At the time of the incident, Defendant WHITE… reported that 'he was directly employed for Defendant, 'Tim Cotter of MX Sports.''" (Doc. 46-1 at 11). Defendant acknowledges that the original complaint similarly alleged that Plaintiff was an employee of MX Sports. (Doc. 53 at ¶40).

Plaintiff tendered defense of the suit and indemnity to Defendant in December of 2014. (Doc. 46-10). Defendant denied coverage in January of 2015, asserting that Plaintiff was "not an employee of MX Sports by any stretch of the imagination," and that Plaintiff was not an additional insured under the policy. (Doc. 46-11 at 3). Plaintiff again tendered defense and indemnity to Defendant in February of 2015. (Doc. 46 at ¶43; Doc. 53 at ¶43). In April of 2015, Defendant again refused to defend Plaintiff for the same reasons it had denied coverage in January. (*Id.* at ¶44).

Early in the Phillips Lawsuit, MX Sports (one of Defendant's insureds) filed a motion asserting that it could not be vicariously liable for Plaintiff's conduct in the accident because it "did not employ, hire, supervise, manage or otherwise control" Plaintiff. (Doc. 46-15 at 11). Plaintiff filed a response, asserting that summary judgment would be inappropriate on the vicarious liability issue because there was "ample evidence to establish that White was under the control of MX Sports… rendering the agency

---

[9] Defendant objects to the use of depositions from the Phillips Lawsuit, asserting the use of the depositions "constitutes an improper use of a deposition against Evanston who was neither a party to the underlying litigation nor a participant in [Plaintiff]'s March 2015 deposition." (Doc. 53 at ¶4). Defendant cites to Federal Rule of Civil Procedure 32(a)(1), and repeats this objection throughout its controverting statement of facts. This objection is without merit. "Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding." *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001). This is true even where the party objecting to the use of the deposition was not a party to the litigation in which the deposition was taken. *Id.*

relationship between White and MX Sports a jury question." (Doc. 46-16 at 3:7-9). Phillips also filed a response in opposition to MX Sports' motion for summary judgment. (*See* Doc. 46-17 at 5).

The California state court denied Defendant's motion on the issue of vicariously liability because issues of fact precluded summary judgment. (Doc. 46 at ¶52). In so ruling, the California Superior Court noted, "The crux of the Opposition filed by Phillips is that MXS exercised control over White. This control therefore creates an issue of fact for the trier of fact to decide." (Doc. 46-17 at 5).

## II.    Legal Standards on Summary Judgment

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1139 (9th Cir. 1994). The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law determines which facts are material.[10] *Id.* The dispute must also be genuine, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted. *Jesinger*, 24 F.3d at 1131.

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986). There is no issue

---

[10] The duty to defend under California substantive law is broad. *See infra* Section III(D)(1). Accordingly, in this case, the existence of any dispute of material fact regarding whether Plaintiff is an Insured under the policy will result in a ruling that Plaintiff was entitled, as a matter of law, to a defense in the underlying action.

for trial unless there is sufficient evidence favoring the non-moving party. *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-250. However, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Where the parties have filed cross-motions for summary judgment, the Court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

## III. Analysis

### A. Choice of Law

The Policy does not include a choice of law provision. Thus, preliminarily, the Court must decide which law applies here. In so doing, the Court must follow Arizona's choice of law rules. *Ins. Co. of North Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 919 (9th Cir. 1999) ("[F]ederal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules."). Arizona, in turn, follows the Restatement (Second) of Conflict of Laws (the "Restatement"). *See Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003). Although the parties both concluded that California law governs this dispute, they reached their conclusions by analyzing different sections of the Restatement. Plaintiff relies upon section 188, whereas Defendant relies

- 9 -

upon section 193.  As discussed next, the Court concludes that under either section, California law indeed applies.

Plaintiff correctly states that where, as here, there is no choice of law provision in a contract, pursuant to section 188, Courts consider a variety of factors to determine which law applies.  The Court considers the place of contracting, the place of negotiating, the place of performance, the location of the subject matter of the contract, and the domicile, residence, place of incorporation, and place of business of the parties in determining which state has the most significant relationship to the transaction and the parties.  *See* Restatement §188.

In this case, neither party to the contract is domiciled in California, but the parties to the contract agreed that the Policy would cover the California Event.  Moreover, the accident occurred in California, and to the extent Defendant may have a duty to defend, that duty would arise in in California. Therefore, even though Defendant is an Illinois domiciliary, and the Policy was entered into in West Virginia, no state other than California has a more significant relationship to the transaction or the parties.

Under §193 of the Restatement, the law of the state "which the parties understood was to be the principal location of the insured risk during the term of the policy" applies unless "some other state has a more significant relationship" to the transaction and the parties.  Comment (f) to §193 also specifically addresses "policies which insure against risks located in several states."  The Policy covered races in more than one state, and so insured against risks located in several states.  Comment (f) to §193 instructs that Courts should apply the law of the state encompassing the principal location of the individual insured risk, so in this case the law of California would apply.

Under the Restatement, whether the Court relies upon §188 or §193, California law governs this dispute.

### B. Collateral Estoppel

As will be discussed in more detail later in this order, to prevail on its motion for summary judgment, Defendant must demonstrate the absence of any potential for coverage under the Policy.  *See* infra, section III(D)(1).  Thus, if Plaintiff is potentially an

Employee of an Insured under the Policy, then Plaintiff is entitled to a defense in the Phillips Lawsuit. According to Plaintiff, this leaves Defendant with only one possible path to success in this lawsuit: arguing that Plaintiff is clearly not an Employee of any Insured. Plaintiff then argues that Defendant is collaterally estopped from making that argument because the California state court ruled against MX Sports' motion for summary judgment on the issue of vicarious liability. (Doc. 45 at 9:12-13) ("Because the issue of White's employment status has already been litigated inconclusively, Defendant is estopped from litigation that issue in this forum."). Defendant disagrees. (Doc. 51 at 8:17-18).

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990) (en banc). Collateral estoppel is sometimes referred to as issue preclusion. *Id.* at n. 3. "Issue preclusion applies: (1) after final adjudication (2) of an identical issues (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. 2015) (citing *Lucido*, 795 P.2d at 1225).

Defendant asserts, with no legal support whatsoever, that estoppel is inapplicable here because (1) the issues are not identical; (2) there has been no final decision; and (3) Defendant was neither a party to, nor in privity with a party to, the Phillips Lawsuit. Plaintiff does not reply to these arguments.

The issue ruled upon in the Phillips Lawsuit is not identical to the issue currently before the Court. The California state court concluded that issues of fact precluded the granting of MX Sports' motion for summary judgment. But MX Sports moved for summary judgment on the issue of vicarious liability, not on the issue of whether Plaintiff is an Employee of an Insured as those terms are defined in the Policy. These are distinct legal issues,[11] as it is possible (at least in theory) that MX Sports could be liable to Phillips on a theory of vicarious liability for Plaintiff's actions *even if* Plaintiff is not an

---

[11] Plaintiff's counsel conceded as much at oral argument.

Employee of an Insured under the Policy. Because the Court concludes that the issues are not identical, it need not reach Defendant's other arguments against collateral estoppel.

### C. Waiver and Estoppel

In its motion for summary judgment, Defendant argued—apparently for the first time—that Plaintiff is not covered under the Policy because he was a "Leased Temporary Worker." In his response, Plaintiff argues that Defendant cannot now assert this defense because Defendant has previously refused to admit that Plaintiff was an employee of any insured entity and has never before asserted its "Leased Temporary Worker" argument. Plaintiff argues that he relied to his detriment on Defendant's prior position and did not perform any discovery on the issue of whether Plaintiff was a Leased Temporary Worker.[12]

In its Reply, Defendant argues that waiver and estoppel cannot be used to "expand coverage not otherwise afforded under the policy." (Doc. 57 at 8:8-9). Defendant also points out that in its initial coverage determination it reserved its rights to assert other coverage defenses. Defendant further asserts that Plaintiff did not rely, to his detriment, on Defendant's earlier position on the coverage issue and challenged Plaintiff's assertion that he would have tailored discovery differently had Defendant asserted this specific defense earlier.

First, the Court notes that Plaintiff only actually made an argument that Defendant *waived* its "Leased Temporary Worker" coverage defense, though Plaintiff also made

---

[12] Plaintiff further asserts that MX Sports' counsel in the underlying litigation engaged in misconduct related to an affidavit signed by Peters, and that misconduct can be imputed to Defendant in this litigation. Specifically, Plaintiff states that in the Phillips Lawsuit, the attorney representing MX Sports (Defendant's insured) procured a false declaration from Marc Peters. Plaintiff avers that MX Sports' attorney prepared the subject declaration for Peters to sign, and obtained his signature on it without ever talking to him about its contents. Peters stated at his deposition that he might not have even seen the declaration before he signed the signature page, and that much of the declaration was not true. The Court is troubled by these statements. The Court notes, however, that the misconduct alleged did not occur in this litigation, that the attorney accused of misconduct represents no party in this litigation, and that the party the attorney represented is not a party to this litigation. Because Plaintiff's waiver argument fails on other grounds, the Court need not decide whether the conduct of an insured's attorney can be imputed to the insurer in a separate litigation.

passing reference to estoppel in his response to Defendant's motion. In any event, if Plaintiff had pursued his estoppel argument, that argument would have failed for lack of detrimental reliance, which is a basic element necessary to find estoppel. *See Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991) (explaining that estoppel "is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts").

"Under California law, waiver is a question of fact… [and] an affirmative defense, for which the insured bears the burden of proof." *Intel*, 952 F.2d at 1559. The insured must prove waiver by clear and convincing evidence, and "doubtful cases will be decided against a waiver." *Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 636 (Cal. 1995). "California courts will find waiver when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Intel*, 952 F.2d at 1559.

Generally, California courts find that "a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." *Waller*, 900 P.2d at 636. Thus, there is no "automatic waiver rule" in California. *Id.* "In cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured." *Intel*, 952 F.2d at 1559. Furthermore, as Defendant correctly points out, neither waiver nor estoppel can be used to expand coverage under an insurance policy. *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.*, 175 Cal. App. 4th 64, 77 (Cal. Ct. App. 2009); *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1066 (Cal. Ct. App. 2010). Waiver and estoppel are only meant to prevent a forfeiture of coverage. *Id.*

Plaintiff has not articulated facts sufficient to find that Defendant has waived the defense it now asserts. Defendant did not intentionally relinquish this right, and even explained in its letter denying coverage to Plaintiff that the letter did not contain "an exhaustive list of reasons which forms the basis of the denial." (Doc. 49-1 at 124). And, as Plaintiff acknowledges, Defendant twice stated in its answer that Plaintiff was not an insured under the policy. (Doc. 10 at ¶¶13-14). The answer encompasses a defense that

Plaintiff was not an insured because he was a particular kind of worker that is expressly excluded from the definition of Insured in the Policy.

Furthermore, Plaintiff has not articulated how he relied, to his detriment, on Defendant's argument that Plaintiff was not an employee. As Defendant points out, Plaintiff did not identify what discovery he needs in light of Defendant's allegedly "new" argument. Additionally, Plaintiff does not appear to have ever abandoned the argument that Plaintiff is an Employee or to have agreed with Defendant's earlier assertions that Plaintiff was not an employee. Indeed, there is a section in Plaintiff's motion for summary judgment titled "Under California law White can establish that he is an employee entitled to defense and indemnity." (Doc. 45 at 10:12-13).

Defendant has not waived—nor is Defendant estopped from asserting—the defense that Plaintiff is not an Insured because he is a "Leased Temporary Worker."

### D. Duty to Defend

#### 1. The Law

California law holds that "the duty to defend is broader than the duty to indemnify." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 258 (Cal. 2014) (citing *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792 (Cal. 1993)). "An insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy." *Id.* (citing *Gray v. Zurich Ins. Co.*, 419 P.2d 168 (Cal. 1966)). "It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the *potential for coverage* under the insuring agreement." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) (emphasis added); *see also Horace Mann*, 846 P.2d at 795. "[T]he duty may exist even where coverage is in doubt and ultimately does not develop." *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993) (en banc) (internal citations and quotation marks omitted); *see also Evanston Ins. Co. v. Am. Safety Indem. Co.*, 786 F. Supp. 2d 1004, 1010 (N.D. Cal. 2011).

"The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it has been shown that there is *no*

potential for coverage." *Montrose*, 861 P.2d at 1157 (emphasis in original); *see also Horace Mann*, 846 P.2d at 795-96. "[T]he duty to defend, although broad, is not unlimited." *Waller*, 900 P.2d at 628. "If the terms of the policy provide no potential for coverage… the insurer acts properly in denying a defense." *Waller*, 900 P.2d at 632. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 861 P.2d at 1160. Thus, "[t]o prevail [in an action seeking declaratory relief on the issue of the duty to defend], the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*… Any seeming disparity in the respective burdens merely reflects the substantive law." *Montrose*, 861 P.2d at 1161.

"Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." *Hartford*, 326 P.3d at 258 (quoting *Scottsdale Ins. Co. v. MV Transportation*, 115 P.3d 460, 466 (Cal. 2005)). The question turns on the facts known to Defendant at the time Plaintiff tendered defense in the underlying lawsuit, "both from the allegations on the face of the third party complaint, and from extrinsic information available to it at that time; and whether these *known facts* created a potential for coverage under the terms of the Policy." *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (Cal. Ct. App. 1995) (emphasis in original).

### 2. The Parties' Arguments

In his motion for summary judgment, Plaintiff avers that employees are insureds under the policy and that the term "Employee" is undefined in the Policy. He then argues that he was, at least arguably, an employee of MX Sports or MX Pro Racing under California law. Thus, the argument goes, Plaintiff had demonstrated the potential for coverage, and was entitled to a defense under the policy. Plaintiff relies heavily on the decision in the Phillips Lawsuit denying summary judgment on the issue of vicarious liability.

Defendant argues that the Policy actually does define Employee, and defines it "so as to exclude a 'leased temporary worker.'" (Doc. 51 at 4:15-16). Despite the fact that

Plaintiff spent roughly half of his motion for summary judgment arguing that Plaintiff is was an employee of an Insured under California law, Defendant does not respond to this argument. Defendant acknowledges that Plaintiff's "status is hotly contested" in the Phillips Lawsuit. (Doc. 51 at 2:16). Defendant then argues that whether Plaintiff is an employee under California law is irrelevant because Plaintiff was actually a "Leased Temporary Worker" under the Policy. The Policy specifically excludes Leased Temporary Workers from the definition of Employee. So, according to Defendant, Plaintiff "cannot meet his burden of demonstrating the potential that he qualifies as an insured" because he is explicitly excluded. (Doc. 51 at 8:15-16).

In his Reply, Plaintiff again argues that the term "Employee" is undefined in the Policy, stating, "While the policy limits who is an 'Employee,' it does not 'define' the term." (Doc. 56 at 6:5-7). Plaintiff reiterates his argument that he was an employee, and asserts that he was not a "Leased Temporary Worker." Plaintiff points out, "Not all short term employees are excluded from coverage under the policy, only Leased Temporary Workers are. Thus, a worker who is temporary, but not leased, can still be an employee." (Doc. 56 at 6:13-15). Plaintiff asserts that he was an Employee "as that term is generally used." (*Id.* at 6:11). Plaintiff also reiterates that MX Sports' right to control him rendered him an employee under California law.

In Defendant's motion for summary judgment, it conceded that its insured had the right to control Plaintiff. Defendant based its motion on its assertion that Plaintiff is a "Leased Temporary Worker" and is not an additional insured under the policy. In his response, Plaintiff offers the same arguments he had included in his motion for summary judgment. Plaintiff also argues that he was not a Leased Temporary Worker under the terms of the Policy. In making this argument, Plaintiff argues that Petersbuilt is not an "Employee Leasing Firm" as that term is defined in the Policy.[13]

. . . .

---

[13] Plaintiff also argued that Defendant was estopped from asserting, or had waived the right to assert, his "Leased Temporary Worker" defense. The Court has already rejected these arguments.

### 3. Analysis

The complaint in the Phillips Lawsuit identified Plaintiff as an employee. When Plaintiff's counsel sent a letter tendering defense to Defendant, he asserted that Plaintiff "was an employee of MX Sports during the event, and is entitled to coverage under the [Policy]." (Doc. 46-10 at 2-3). The letter also contained facts and legal analysis arguing that Plaintiff was an employee. Thus, Defendant was aware of the potential that Plaintiff was an Employee, and therefore an Insured, when it originally refused to defend Plaintiff in the Phillips Lawsuit. *See Gunderson*, 37 Cal. App. 4th at 1114 (explaining that the relevant question is whether facts known to the insurer created a potential for coverage).

Employees are Insureds for "work done within the scope of their employment by [the Insured]; or their performance of duties related to the conduct of [the Insured's] business." (Doc. 46-14 at 46). The term Employee is not defined in the Policy, but the Policy contains some guidance regarding who is included in the definition of an Employee. "Employee includes a Leased Worker, other than a leased temporary worker." (*Id.* at 47). Neither party has suggested that only Leased Workers are Employees, and the use of "includes" rather than "means" or "is defined as" demonstrates that the term Employee encompasses more than just Leased Workers.

If Plaintiff was an Employee of an Insured, and not a Leased Temporary Worker, then he was an Insured under the policy. Thus, if the potential exists that Plaintiff was an Employee of an Insured, and not a Leased Temporary Worker, Defendant had a duty to defend Plaintiff in the underlying action.

Defendant insists that Plaintiff was a Leased Temporary Worker under the Policy and therefore was not an Employee and not an Insured. Under the Policy, a "Leased Temporary Worker" is a subset of individuals who also qualify as "Leased Workers." "Leased Worker means any person who: is hired from an Employee Leasing Firm under a contract or agreement between the hirer and that firm; and is performing duties related to the conduct of the hirer's business." (*Id.*) A Leased Temporary Worker, like any Leased Worker, must be hired from an Employee Leasing Firm.

"Employee Leasing Firm means any person or organization that hires out workers to others.  It includes any: employment agency, contractor, or service; labor leasing firm; or temporary help service."  (Doc. 46-14 at 47).  Defendant draws the Court's attention to the word "contractor" in this clause.  Defendant asserts that because Petersbuilt was a "contractor" hired by MX Sports, and Petersbuilt sent MX Sports an invoice for the work performed by Plaintiff and others, Petersbuilt was an "Employee Leasing Firm."  The Policy language does not support such a conclusion.

The word "contractor" in that clause is modified by the term "employment."  The clause "employment agency, contractor, or service;" is given its own bullet point in the Policy, and there is a separate clause and bullet point indicating that the term Employee Leasing Firm encompasses a "temporary help service."  If, as Defendant asserts, the word "contractor" was not modified by the word "employment" in this clause, then it follows that the word "service" is not modified by the word "employment."  This begs the question, why would the drafter include the third bullet point specifying the inclusion of a "temporary help service" if all services were necessarily included within the first bullet point?  The logical conclusion is that the word "employment" modifies the words "agency," "contractor," and "service."  Defendant does not argue that Petersbuilt is an "employment contractor,"[14] and the Court certainly cannot conclude that Petersbuilt is so clearly an "employment contractor" as to relieve Defendant of its duty to defend Plaintiff.

Defendant also argues that Petersbuilt is an Employee Leasing Firm because it "hired" Plaintiff.  As noted above, the defining feature of an Employee Leasing Firm is that the entity "hires out workers to others."  (Doc. 46-14 at 47).  Defendant did not initially present an argument that Petersbuilt is an Employee Leasing Firm because it "hires out workers to others."  Plaintiff, in his response to Defendant's motion for summary judgment, argues, "There is no evidence that Peters/Petersbuilt hires out workers to others as a service."  (Doc. 52 at 11:22-23).  Defendant replied to this argument by stating, "[T]he record is replete with evidence that Peters has a history of

_____

[14] Defendant instead refers to Petersbuilt as a "service contractor."  (Doc. 47 at 10:21).

*supplying workers* to MX Sports and that he did so for the Lake Elsinore event." (Doc. 57 at 4:10-11) (emphasis added). Defendant further urges that all "supplied workers should be treated the same, regardless of whether they are supplied by a labor leasing company or here, by contractor Petersbuilttrack." (*Id.* at 7:4-6). But this is not what the Policy says. Only those Leased Temporary Workers hired by an Employee Leasing Firm are excluded from the pool of Employees, and an Employee Leasing Firm by definition "hires out workers to others." Defendant has not demonstrated that "hiring out" is the same thing as "supplying."

At minimum, the potential exists that Plaintiff was not a Leased Temporary Worker. The Court now turns to the question of whether Plaintiff was—at least potentially—an Employee under the Policy.[15] The word "Employee," despite being capitalized and bolded, remains undefined in the Policy. The Policy provides us with some information about who is an Employee—a Leased Worker is an Employee, but a Leased Temporary Worker is not—but the Policy does not include a complete definition of the term. So, the Court must interpret the word "Employee" in the Policy to determine if Plaintiff was potentially an Employee. The Court turns to California law for guidance.

Under California law, "Interpretation of an insurance policy is a question of law, and such policies are to be interpreted under the general rules of contract interpretation." *Bay Area Roofers Health & Welfare Trust v. Sun Life Ins. Co. of Canada*, 73 F. Supp. 3d 1154, 1162 (N.D. Cal. 2014) (citing *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 145 P.3d 472, 476 (Cal. 2006)).

"The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties." *TRB Investments*, 145 P.3d at 476 (internal quotation marks and citation omitted). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* at 477. "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a

---

[15] The Court ordered supplemental briefing and held oral argument on this narrow issue. (Doc. 61 and 62).

technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."  Cal. Civ. Code §1644.

Despite the case law and statutes indicating that words of an insurance contract are to be given their ordinary and popular meaning, Plaintiff asserts that this court should interpret the word "Employee" in the Policy according to its legal meaning, which must be ascertained by reference to the Restatement (Second) of Agency §220.  (Doc. 61 at 2:15-17 ("[I]n deciding how to apply the term 'employee,' when used in insurance policies, the courts rely on the same common law test [] as enunciated in *Restatement of Agency 2d §220*.")).   This argument is at odds with the general rules of contract interpretation that apply to insurance contracts.  Plaintiff's counsel acknowledged as much at oral argument, and stated that this divergence remained unexplained by the California courts or legislature.  Nevertheless, Plaintiff maintains that the legal meaning of the word "Employee" governs the contract.[16]

---

[16] Plaintiff cites two cases in support of this argument:  *Global Hawk Ins. Co. v. Le*, 225 Cal. App. 4th 593 (Cal. App. 2014), and *Fireman's Fund Ins. Co. v. Davis*, 37 Cal. App. 4th 1432 (Cal. App. 1995).  Those cases do not offer strong support for Plaintiff's argument as in neither case did the California Court of Appeals ever make the sweeping assertion that when interpreting the word "employee" in an insurance contract, one ignores the statutory and common law requirement that contractual language be interpreted according to its ordinary and popular meaning.

That said, the Court acknowledges that there is not much case law interpreting the word "employee" in insurance contracts under California law, and what little case law there is does not clearly state whether the legal definition of the word "employee" or the ordinary and popular definition of that term controls.  For example, in *Bay Area Roofers Health & Welfare Trust v. Sun Life Ins. Co. of Canada*, 73 F. Supp. 3d 1154, 1162 (N.D. Cal. 2014), the California District Court interpreted the term "employee" in an insurance policy under California law.  73 F. Supp. 3d at 1157.  The California District Court stated, "There being no definition of 'employee' in the Policy… the Court finds that the term is to be given its plain and ordinary meaning *under the law*."  *Bay Area Roofers*, 73 F. Supp. 3d at 1167 (emphasis added).  This standard—plain and ordinary meaning under the law—sounds like a hybrid of plain and ordinary meaning and legal meaning.  Indeed, the California District Court discussed federal statutes, California state statutes, and case law in its analysis of the "plain and ordinary meaning" of the word "employee."

"When interpreting state law, federal courts are bound by decisions of the state's highest court."  *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011).  "In the absence of such a decision, a federal court must predict how the highest state court

The factual background of this case shows that the organization of the Event was a complicated process involving multiple entities and a variety of workers.[17]  Plaintiff's precise status at the Event is not clear, but it is clear that Plaintiff was working at the time of the incident giving rise to the Phillips Lawsuit, and he may have been working for a named insured.  Furthermore, he may have been under the control of (and therefore an agent of) a named insured.  The Court concludes that whether the legal definition of the word Employee or the "plain and ordinary" meaning of the word Employee controls, the possibility remains that Plaintiff was an "Employee" of a named Insured, and was thus an Insured under the Policy.  Indeed, Defendant's counsel repeatedly acknowledged as much at oral argument.

There is at least the potential that Plaintiff was an Employee under the Policy. Defendant was aware of the facts leading to that conclusion when Plaintiff tendered defense to Defendant, and the complaint in the Phillips Lawsuit alleges that Plaintiff was an employee.  *See Waller*, 900 P.2d at 627 ("[A]n insurer has a duty to defend if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement."); *Gunderson*, 37 Cal. App. 4th at 1114 (explaining that the relevant question is whether facts known to the insurer created a potential for coverage).  Thus, Defendant had a duty to defend Plaintiff in the Phillips Lawsuit.

The fact that Plaintiff may ultimately be found to be an independent contractor rather than an agent or employee is irrelevant to the question of duty to defend, as "the duty may exist even where coverage is in doubt and ultimately does not develop." *Montrose*, 861 P.2d at 1157.  To prevail, Defendant would have needed to establish the absence of any potential for coverage.  *Id.* at 1161.  Defendant did not meet this burden.

would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.*  The California Supreme Court has never explained how it would interpret the word "Employee" in an insurance policy, so this Court may eventually need to predict how it would rule on such a question.  But the Court need not do so now.

[17] Again, the word "workers" has no legal significance here.

Plaintiff, on the other hand, only needed to demonstrate the existence of potential for coverage. *Id.* Plaintiff has done so. "Any seeming disparity in the respective burdens merely reflects the substantive law." *Id*.

There is an issue of fact in this case regarding whether Plaintiff is an Insured under the Policy. But whether he is an insured or not, Plaintiff is entitled to summary judgment on the duty to defend for the reasons stated above. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Any disputes over Plaintiff's status as an Insured will not affect the outcome on the issue of duty to defend because the duty to defend exists where the *potential* for coverage exists. *Montrose*, 861 P.2d at 1157.

**IV. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment re: Duty to Defend (Doc. 45) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 47) is **DENIED**.

**Dated** this 1st day of May, 2017.

Honorable Diane J. Humetewa
United States District Judge

- 22 -